## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

|  |  |  |
|---|---|---|
| ANTHONY MARCANTONIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 3:15-at-99999 |
| | ) | |
| KYLE DUDZINSKI, | ) | |
| LUKE PAPENDICK, | ) | |
| CHARLES ROMMEL, | ) | |
| DAVID INGRAHAM, and | ) | |
| JACOB PEARCE, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

### NATURE OF ACTION

1.      This is a demand for a jury trial in a civil action brought by plaintiff against defendants for conspiring to and for committing assault, battery, false imprisonment, hazing, the intentional infliction of emotional distress, interference with contractual relations, as well as for negligence, conspiracy to injure the plaintiff in his trade, and for punitive damages under Virginia law. The tortious conduct described in this Complaint arose when the defendants, all on the varsity swim team of the University of Virginia ("UVA"), conspired to, and did, engage in a systematic, threatening, degrading, humiliating and violent hazing of the plaintiff when he was a first year student at the University of Virginia and a member of its swim team and when defendants retaliated against plaintiff after he answered questions, when asked, by UVA officials about defendants' wrongful conduct.

### THE PARTIES

2.      Plaintiff Anthony Marcantonio is an individual domiciled in Massachusetts.

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

1

3.     Defendant Kyle Dudzinski is an individual domiciled in Ann Arbor, Michigan or Pittsburgh, Pennsylvania.

4.     Defendant Luke Papendick is an individual domiciled in Kinnelon, New Jersey or in Ann Arbor, Michigan.

5.     Defendant Charles Rommel is an individual domiciled in Charlottesville, Virginia, or in East Amherst, New York.

6.     Defendant David Ingraham is an individual domiciled in Charlottesville, Virginia, or in Spartanburg, South Carolina, or in New York, New York.

7.     Defendant Jacob Pearce (hereinafter "Jake Pearce") is an individual domiciled in Charlottesville, Virginia, or in Tulsa, Oklahoma.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action under 28 U.S.C. section 1332(a) because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and the parties are citizens of different States.

9.     Personal jurisdiction exists generally over the defendants, because each have had sufficient minimum contacts with Virginia and with this District as a result of their residence within Virginia and within this District, and, alternatively, because all of the claims alleged in this Complaint arise from their actions occurring within Virginia and this District.

10.     Venue is proper in this District under 28 U.S.C. section 1391(b) because a substantial part of the events giving rise to the claims stated herein occurred within this District.

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

## FACTS RELEVANT TO ALL COUNTS

### Plaintiff's Background

11.    Plaintiff Anthony Marcantonio is currently a 19-year-old young man who, while in high school during the period between the fall of 2009 and the spring of 2013, was an honor roll student during all four years and an AP Scholar for his final two high school years.

12.    Plaintiff also during high school years became an excellent, competitive swimmer through his hard work and his constant exercise and training during which he devoted extremely long hours in the swimming pool. His aim and dream was to become such an accomplished and skilled competitive swimmer during his high school years that he could become qualified to swim competitively on one of the best varsity swim teams at one of the best universities in the country and thereafter swim competitively after graduating. Virtually every weekend and many mornings and evenings after school during high school were devoted to practice and development of his swim skills. This involved a great deal of sacrifice in that he forewent virtually all other activities, except his academic studies, to achieve his swimming goals.

13.    Plaintiff did achieve his competitive swim and academic goals because of all his hard work, study, practice, and sacrifice. As a result, he became known throughout the swim community as an excellent swimmer with the promise of becoming one of the finest university-level swimmers. He swam for one of the most competitive swim clubs in the northeast United States, was a finalist at the Speedo Junior National Championships, one of the most challenging competitions for high school swimmers, was a USA Swimming Scholastic All American for three years, was a three-time qualifier for the Speedo Junior National Championships, a two-time qualifier for the Speedo National Championships, and a 2016

Jonathan Rogers, P.C.
Attorney At Law
Floyd, Virginia 24091
540-745-8686

3

Olympic Trials qualifier, among other distinctions, and his swim times and successes at swim meets were posted on various national swim websites.

14.    As a result, at the beginning of his senior year in high school, during the summer and fall of 2013, when college and university entrance is being sought by all high school students seeking a higher education, plaintiff was able to compete for a place at many of the finest academic universities in the country with the most advanced and competitive swim teams.

15.    Indeed, Plaintiff was pursued and recruited by many coaches at these universities. He traveled from Massachusetts to visit university campuses on recruiting trips to speak at length with their swim coaches and swim team members, at the invitation of those coaches so that he could decide which of his many options he would choose.

16.    The choice of which university to attend was the most important of plaintiff's young life. He was 18 years old, and he had to decide which university was the best for him in terms of both its academic promise and his swimming career. Not only did plaintiff seek the best university swim team experience he could obtain, he was going to use his college training as a basis for swimming professionally or even try to compete in the Olympics. His choice of a university swim team would therefore greatly impact those possible professional pursuits. Where he attended college and how he performed on its swim team was part of an outcome that would later determine if he would swim professionally after he graduated.

### Plaintiff's Choice to Attend UVA

17.    UVA was among the many fine colleges and universities which recruited plaintiff and his parents. Its varsity swim coach, Augie Busch, made a forceful and compelling presentation to plaintiff. Coach Busch also stated that his primary focus was the NCAA which

Jonathan Rogers, P.C.
Attorney At Law
Floyd, Virginia 24091
540-745-8686

4

fed into plaintiff's personal goals to compete against the best college athletes in the country. Coach Busch encouraged plaintiff to choose UVA, saying words to the effect that he would love the experience and would develop his swim skills. Of particular interest to plaintiff and his parents were the descriptions given by the UVA coach, and indeed by some of the swim team members with whom plaintiff met and spoke with when he was being recruited by UVA, about the supportive attitude of the swim team towards its members. Plaintiff was led to believe that if he came to the UVA swim team, he would be surrounded by young men of good character and fellowship towards each other not just skilled swimmers.

18.     Moreover, as had been reiterated to plaintiff while being recruited, UVA has a stated anti-hazing policy which assured plaintiff that he would not be subjected to hostile, aggressive, threatening or violent actions by the swim team upperclassmen, as had been known to occur on various swim teams and other athletic teams at the college level. Specifically, the UVA Student Handbook promised plaintiff, as it promised all incoming students, that UVA had a strict prohibition against hazing. The Handbook states:

> Hazing is prohibited by state law and University policy including the University's Standards of Conduct. . . . The University defines "hazing" as any action taken or any situation created by members of a student organization toward one or more organization members . . . designed to or produces mental or physical harassment, discomfort, or ridicule. Such activity and situations include, but are not limited to, creation of physical or psychological shock, fatigue, stress, injury or harm.

Indeed, the published UVA Standards of Conduct, which are said by UVA to be binding upon all UVA students, prohibited hazing in any form, along with any "physical assault" of any person and any conduct that intentionally or recklessly threatens the health or safety of any person on University-owned or leased property . . . ."

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8666

19.     Plaintiff was induced and persuaded by the description given to him and his parents about the benefits of swimming on the UVA swim team, as well as because of the excellent reputation of UVA generally with its high academic standards, its storied history, its above-quoted anti-hazing policy and Standards of Conduct, and its adherence to an absolute Honor Code by which all members of the UVA community declare that they devote themselves to honesty in all their activities while attending UVA. Plaintiff therefore elected to forego the other choices he had earned and, instead, to attend UVA and swim for its swim team.

20.     Plaintiff entered into a contract with UVA under the terms of which he would come to UVA to study and to swim on its Varsity swim team.

21.     When plaintiff told UVA of his decision to attend and swim for it, the UVA swim coach made the following public announcement regarding plaintiff's signing with the UVA swim team:

> Anthony has a love for swimming that comes through very quickly. It fuels his passion for improvement. He relishes being a student of the sport and constantly is finding areas where he can improve. He has four solid strokes so his potential in IM is through the roof. His desire to be great combined with a tremendous work ethic will be great assets for not only his individual career but also for our team atmosphere. He will bring a lot of great things to our team and we are lucky to have him.

22.     Accordingly, the promising, hard-working, highly-skilled and devoted young man described above, Plaintiff Anthony Marcantonio, traveled to the UVA campus in August, 2014 to pursue his dream, and his academic and professional goals, under the contract and with the assurances described above.

**The UVA Swim House Hazing**

23.     Accordingly, at the end of the summer of 2014, plaintiff packed his belongings to pursue his dreams at UVA and his parents and two brothers drove him from their home in

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

Massachusetts to the UVA campus. Shortly after arriving on the campus, defendants Kyle

Dudzinski and Luke Papendick called a meeting of the first year swimmers ("first years") to

tell them there would be a "welcome week" for them hosted by the upperclassman swimmers.

During the week there would be "team bonding." They said it would be a really fun week

where the first years would have to wear ties on some days, there would be a series of meetings

and social gatherings, and they would "do other fun stuff."

      24.     Instead of the welcoming promised plaintiff, here is what occurred during the

"Welcome Week" commencing on August 26, 2014. As plaintiff was waiting to hear what he

should do and where he should go for the first team gathering during that week, he received the

following email from "Mr. Mean," an email address that had been created by defendants Kyle

Dudzinski, Luke Papendick, Charles Rommel, David Ingraham, and Jacob Pearce, and from

which they each combined and conspired to write the emails quoted in this Complaint,

including this first email:

> From: Mr. Mean
> Date: Tue, Aug 26, 2014 at 8:29PM
> Subject: [firstyearswim] Welcome!!!!!!!!!!
> To: [first years]
>
> Dearrest shitcunts:
>
> To be honest, I am fucking embarrassed to be introducing such a sorry class of
> gender-- neutral dick sucks to these hallowed grounds. But hey, your parents
> couldn't stand the thought of being seen in public with their paint sniffing
> children any longer so they sent you to me. In case you haven't heard, I am Mr.
> Mean, and what I say, goes. When I call, you come running; when I talk, you shut
> the fuck up and listen; when I sneeze, you get on your bony knees and lick the
> floor spotless.
>
> Introductions aside, tomorrow begins your undoubtedly pathetic attempts to
> navigate one of this team's greatest traditions: Welcome Week. So guess what?
> We're having our first fucking event tomorrow! … I want all of you to show up in

Jonathan Rogers, P.C.
Attorney At Law
Floyd, Virginia 24091
540-745-8686

your Sunday's best. That means ties, slacks, and coats, unless you were all raised on a damned goat farm, but at this point I'm not going to assume you weren't. "But when should we do this Mr. Mean?" you will *all* eagerly ask. To which I will reply, "Wednesday, August 27th of the year of our Lord two-thousand and fourteen at exactly 11:34.16 PM Mountain Standard Time, you will drag your sorry asses to 1100 Wertland St."

If you arrive even a second later or earlier, and it better be with a damn smile on your face, I can promise you, I CAN PROMISE YOU, I will wait until you fall in love, you're about to get married and you're feeling like the happiest guy on earth, and proceed to butt fuck the shit out of your fiance right in front of your still smiling faces.

*If you tell a soul, and I mean even your pet chinchilla, I will track you down and mercilessly ravage your gaping assholes with the dry ice dildo we have packed away for you boys.* So do yourselves and your prostates a favor and keep your FUCKING MOUTHS SHUT.

Fuck you. My sauce is the boss.

[signed] Mr. Mean

Thereafter, the next day, before the scheduled arrival time stated above, plaintiff received

another troubling email:

From: Mr. Mean
Date: Wed, Aug 27, 2014 at 5:26PM
Subject: [firstyearswim] Sometimes, Time Doesn't Heal
To: [first years]

Hey cunt munchers, because your mommies called telling us you were complaining about getting your beauty sleep, we have decided to change the meeting time to 6:27.54 Mountain Standard Time. Get your shit together and be there.

Fuck you

25.   Being unsure of whether to be concerned or fearful because of the emails just

quoted, or whether they were some sort of unpleasant joke emails the upperclassmen had sent

to the first years, and because plaintiff did not want to appear squeamish to those with whom

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

he hoped to swim for four important years as he developed his swimming skills and strengths, on August 27, 2014, plaintiff went at or near the appointed hour to the designated place, which was a house near campus located at 1100 Wertland Street in Charlottesville in which some of the upperclassmen swimmers lived and which is generally referred to as the "Swim House."

26.  When he arrived and entered the Swim House, the following occurred and was instigated by the defendants who were the organizers and who participated and instigated the actions described below and caused the other upperclassman swimmers to participate:

(i)      The Swim House was dark inside with no conventional lighting turned on. Instead, there was a strobe light going and there was heavy-metal, satanic music blaring on a television-sized speaker;

(ii)     Plaintiff saw another first year who was there and seated when plaintiff entered the Swim House, and his face showed shock and fear;

(iii)    Plaintiff was told by an upperclassman to sit down on the couch and told to take off his tie and anything else he didn't want to get wet, which he did;

(iv)     Defendant Rommel then entered the room and screamed that plaintiff and the other first years should have arrived together as a first-year class and that they were "fucking retarded;"

(v)      Defendant Kyle Dudzinski then entered with a frowning and scowling face asking if plaintiff and the others were scared;

(vi)     Defendant David Ingraham then picked up a "Caution: Wet Floor" sign that had "pussy" written over the word "floor" and instructed plaintiff and the other first years to say that word;

(vii)    Defendants then proceeded to put buckets on plaintiff's and the other

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

9

first years' heads. Plaintiff's was a trash bucket, while the other first years had cylinders that had two open ends and slots on the side;

(viii)   Defendants then began to insult and taunt the first year swimmers, including plaintiff, in loud voices and with the use of much profanity for "looking so stupid;"

(ix)   By this time all of the first years, including plaintiff, were trapped inside and because of what had gone on before since his arrival at the Swim House, the yelling, screaming, obscenities and threatening tone and words being used by the upperclassman, plaintiff was beginning to fear for his safety;

(x)   After some more taunts and after defendants removed the buckets from their heads, defendants told the first years to stand up and they were then physically placed by defendants in a line while defendants then further taunted them in loud voices;

(xi)   Defendants Kyle Dudzinski and David Ingraham waltzed in front of plaintiff and the other first years, coming menacingly close to them with sudden and threatening movements and grunts at the first years, as they were standing in a line. All the while the music was still blaring to the point where plaintiff could barely hear;

(xii)   Defendants then put blindfolds on the first years, using old and dirty, stained ties and cummerbunds;

(xiii)   Defendants then screamed at them and ordered each to reach underneath their legs and behind them and grab the private parts of the first year directly behind and do the "Elephant Walk," which meant walking along in that

Jonathan Rogers, P.C.
Attorney At Law
Floyd, Virginia 24091
540-745-8686

humiliating position, blindfolded and nervous;

(xiv)   As the first years were walking in this manner, plaintiff, could, out of the side of his blindfold, see several upperclassmen standing in the hallway as they passed with one waiving his exposed penis at them, while all the upperclassmen were loudly yelling taunts and jeers in the enclosed space of the hallway;

(xv)    The first years walked this Elephant Walk across the floor of the main room where they had been placed by defendants and into the Swim House bathroom while defendants continued to scream and yell taunts at them in foul language. The bathroom was dark. Plaintiff felt closed in, becoming disoriented and even more concerned;

(xvi)   After all the first years, including plaintiff, had been marched by defendants into the bathroom, defendant Jake Pearce screamed that the first years "had one hour" and slammed the door shut;

(xvii)  After the first years turned on the light; they saw that there were large containers of alcohol and other liquids including beer, beer with tomato juice, milk, and hard liquor; the first years also observed that all the ways to pour out the alcohol were blocked; the sink had duct tape sealing it off; the toilet lid was duct-taped closed; the windows were duct-taped shut; and the shower drain was closed up;

(xviii) Defendants reopened the bathroom door and screamed at the first years for having the lights turned on without asking permission, and yelled at them to turn them off; and the first years were also yelled at to drink all the alcohol and other liquids in the bathroom immediately and that, if any drop of alcohol was

11

poured out the window or down the drain, each of the first years would "get the dry-ice dildo;"

(xix)   One first year complained that his eye (which had been earlier damaged by Charles Rommel) was in pain. This eye injury had been caused when defendant Rommel had flown into a rage and slammed a glass bottle on the ground with so much force that it had splintered, causing bits of glass to fly around, one of which entered and injured the first year's eyeball;

(xx)   As of this point in the evening, the defendants and those they were instigating had thus far made many loud threats of violence, were constantly yelling and screaming at plaintiff and the others, had blindfolded them, put buckets on their heads, injured the eye of one first year, and had locked them into a bathroom with large quantities of alcohol that they were told they had to drink or they would be sodomized, a threat that had been made both in the email the night before and loudly and in a threatening manner after they had been marched blindfolded into the bathroom;

(xxi)   For the next hour or so, while the first years were forced to remain in the darkened bathroom, defendants would from time to time open the door and demand an empty bottle of alcohol from among the full ones they had placed there before the first years had been forced to go into the bathroom and drink all that alcohol;

(xxii)   All the first years who drank the alcohol became intoxicated;

(xxiii)  At some point while this forced drinking was continuing, defendant Charles Rommel and Jake Pearce opened the door, taunted and yelled at the first

Jonathan Rogers, P.C.
Attorney At Law
Floyd, Virginia 24091
540-745-8686

12

years, swore at them, and then slammed the door shut;

(xxiv)  Periodically, while the forced drinking was continuing in the dark bathroom and, several of the defendants yelled profanities. Various defendants, including Charlie Rommel and Jake Pearce, would yell outside the closed door telling the first years to make the sound that one of the women's team members makes. This female experiences episodes of hiccupping in a unique manner causing a distinctive sound that the first years were being told to mock. The first years complied but when they then stopped making the hiccupping noises, they were yelled at and threatened;

(xxv)   Defendants then threw in questionnaire papers and a pen and, at the request of the first years, a flashlight. Thereafter, from time to time the door would open and a bucket of water would be thrown in;

(xxvi)  By this time the bathroom had become very hot and its walls were sweating, as were the first years locked inside; a radiator inside the bathroom had been turned on, even though it was August in Virginia;

(xxvii) While the first years were still being forced to remain in the bathroom, defendants opened the door and ordered the first years to fill out the questionnaires referred to above which required them to first write down their names, hometowns, and birthdates so that the answers could be permanently identified as belonging to them and then instructed them to answer, in writing, the following intrusive and humiliating questions:

> How many of the girls on the women's team have you hooked up with?
>
> How many would you be likely to fuck?

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

Who on the women's team would you abort, and how would you go about doing it?

What is your favorite team moment?

What is your favorite drink?

What is your favorite sex position?

What are your thoughts on salad dressing?  Explain in 2-3 sentences FULL and complete and concise.  (Be as specific as possible)

Fuck, kill, marry, your uncle, or mother, or your grandmother?

(xxviii) Defendants then would, from the outside of the bathroom where they had been taunting and yelling at the first years inside, crack open the door slightly, instruct one first year to come to the door and then ask him various filthy and degrading follow-up questions as stated above and plaintiff, when his turn came to be asked such questions, was told, by defendant David Ingraham to answer the following questions:

- to describe one of the last sexual intercourse experiences that he had had, to which he replied that he had never had any;

- to describe in detail what a woman sucking his penis would feel like and he did so because he felt that he had to for his personal safety, giving a very humiliating answer;

- to name porn movies to defendant David Ingraham.

Plaintiff felt forced to make up answers to these questions; and he did so, but afterwards felt humiliated and ashamed at what he had said;

(xxix)  Thereafter, one by one, the defendants took the first years out of the

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

bathroom, made each of them face a corner with the rest of the team behind them, and put a blindfold on them once again;

(xxx)   While each first year was being brought out, one at a time, to be further humiliated outside the bathroom, the first years who remained in the bathroom in the dark were told to remain silent; and when anyone spoke or even whispered, defendant Jake Pearce kept on opening the door and yelling at the first years to "Shut the fuck up;"

(xxxi)  When plaintiff's turn came to be led out of the bathroom, he was blind-folded and could hear loud jeering and taunts as he was being walked into the main hallway of the Swim House. He then became even more fearful, not knowing what to expect and believing that these defendants and the other upperclassman had become drunk and had lost all self-control, a belief caused by the strong odor of alcohol and the loud, aggressive, taunting, and threatening manner that they continued to use when addressing plaintiff and the other swim team first years;

(xxxii) Plaintiff was again forced to sit in a chair as was his roommate before him who subsequently was knocked out of his chair by the upperclassmen by force after being asked what was the worst thing he could call a Jewish person;

(xxxiii) Another first year was yelled at to defecate in a bucket;

(xxxiv) Some first years were led out of the bathroom, blindfolded, and then sat down on the open end of a bucket;

(xxxv) After all the first years had been brought individually from the bathroom to the main hallway and forced to sit, each was again questioned by defendants.

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

15

When it was the plaintiff's turn to be questioned, while still blindfolded, plaintiff was asked to state his name and when he did, defendant Charles Rommel yelled at him that his real name was "Anthony Fucking Weiner," a reference to a former Congressman who had lost his public office because he had been caught sending screen shots of his genital anatomy by email to various women; and plaintiff was made to repeat that name as his own repeatedly in a loud voice;

(xxxvi) Thereafter, plaintiff was yelled at by defendant Charles Rommel and asked who he would most likely have sex with on the UVA women's team and what is the most offensive thing he could say to a black person?  When plaintiff gave the defendants the answer he thought they wanted by using a racist term, they made him stand up, they took off his blind-fold and standing in front of him was an African-American male; as this occurred, all the upperclassmen including defendants jeered at plaintiff and mocked him while defendant Charles Rommel danced around in front of him, laughing and jeering at him. Throughout this time while he had been blindfolded, defendants were or were causing others to pour an unknown liquid over his head which rolled down around his neck and face while plaintiff tried to keep his mouth shut to prevent taking this liquid into his mouth;

(xxxvii) By this time, plaintiff was delirious and could no longer think clearly. He was afraid for his life, and felt paralyzed; he was pushed and shoved back into his seat;

(xxxviii) Plaintiff was then made to stand up again, blind-folded again, as he

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

heard another first year being brought forward to be interrogated just as he had been;

(xxxix) After much time had passed, all the first years were brought together in another part of the main room, made to sit on the floor and assume a position with their hands over their heads, in a so-called "streamline" position, a swim position with arms over head, shoulders squeezed towards the ears, and hands clasped together. While the first years were in that position they were screamed at if the defendants and other upperclassmen felt that their streamline positions were not good;

(xl)     Then, the music stopped, and the first years were told to take off their blindfolds;

(xli)     Everyone gathered in that one room and for about a half-hour, and starting from the fourth-years, then the third-years, everyone made a toast;

(xlii)    Defendant Jake Pearce made a toast using the word "pussy" a word that the swim coach had just recently instructed the team never to use because of its denigrating connotations for the female swimmers and other women;

(xliii)   Thereafter, defendants, who had each been the instigators and ringleaders of this entire hazing event, as well as the joint authors of the emails quoted above at paragraph 24 of this Complaint, led all of the first years to the very back of the outside of the Swim House and onto its back porch;

(xliv)   Plaintiff had earlier told the defendants that he did not drink alcohol. As retribution he had been forced to drink a gallon of milk and later, during the toasting, four glasses of prune juice. He therefore threw up while they were all

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

on the back porch, over the back porch balcony, and while he was doing so,

these defendants taunted him with long and loud taunts of "oooooh and

"aaaaah;"

(xlv)    Then, defendant Jake Pearce came forward with a bucket of live goldfish

in it, and defendants gave each first year a goldfish from the bucket and told

them to name it and then eat it. Plaintiff did so, fearing for his safety and

defendants made plaintiff prove he had eaten the fish by showing it mashed in

his mouth, rather than swallowed whole.

(xlvi)   Defendants then gave the first years scavenger hunt lists as well as the

questionnaires referred to in paragraph 28, above, that were also filled out by

each individual upperclassmen.  This was the same filthy questionnaire the first

years had been forced to fill out earlier in the evening and the first years were

told that, by the following week, they had to fulfill the scavenger hunt list and

memorize the upperclassmen's answers to the questionnaire.  Noted by the

plaintiff as the answer to the question of "who on the women's team would you

abort and how would you go about doing it?"  Defendant Kyle Dudzinski's

answer chose one of the most prominent and accomplished college female

swimmers who swims for the UVA women's team.  He wrote that he would cut

or break her arms/legs or limbs and stuff her in an oven;

(xlvii)  The first years, including Plaintiff, were then given another fish in a

plastic cup, told to name their fish and then hold the plastic cup in their hands.

One by one the first years were told to walk down the hall and go out to the

front porch to declare the name of their fish and why they gave it the name they

Jonathan Rogers, P.C.
Attorney At Law
Floyd, Virginia 24091
540-745-8686

had chosen. Plaintiff's fish was knocked out of the cup in his hand and it dropped to the floor and the defendants all tried to stomp it to death while they yelled at plaintiff that he had better save the fish from being killed;

(xlviii) The end result was that the plaintiff's fish died from being stomped on by upperclassmen's feet;

(xlix)   Plaintiff and the other first year were then given the filthy ties and cummerbunds that had been used earlier to blindfold them and told that for the rest of "Welcome Week," they must wear them whenever they left their dormitory rooms. They were also told that they had until Monday, September 8, 2014, to complete the scavenger list, some of which would require stealing items from retail stores, the school, or other members of the swim team in violation of the UVA Honor Code.

27.     Plaintiff and the other first years were then told to return to their dormitory rooms. It was by that time approximately one or two a.m. on the morning of August 28, 2014. Plaintiff and the other first years on the swim team had been thus tormented, harassed, assaulted, held captive, threatened and terrorized for over five hours. During the entire time Plaintiff had been subjected to the hazing described above, he had felt captive and not free to leave. He had been physically assaulted and verbally threatened repeatedly, with sodomy and other violence and, as a result, believed that if he had tried to leave, he would have been beaten. Moreover, he had come to UVA to pursue his swimming goals, an opportunity to which he had dedicated all of his hard work and long hours in high school. These defendants, plaintiff believed, had the power to deprive him of his ability to swim for UVA. He therefore not only feared for his safety, he also feared that, if he could somehow have escaped to safety, the upper

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

19

classman swimmers could cause him to lose the swim team opportunity that he had worked so hard to earn.

28.    During all of that time Defendant Kyle Dudzinski had been the ringleader during the entire time spent at the Swim House, as described above, initiating many of the actions described above and being followed by the other defendants in the swearing, taunting, threatening and humiliation throughout the evening. The other named defendants were willing participants in the actions described above, took the actions described above, and urged the other upperclassmen to engage in this hazing activity.

### Additional Hazing Actions by Defendants

29.    On and after August 28, 2014, the day that the above-described Swim House hazing ended, Plaintiff was subjected to additional hazing by defendants.

30.    Just twelve hours after Plaintiff had been set free of the Swim House, he and the other first years received the following threatening email sent by "Mr. Mean" which had been made up and sent by the defendants:

> From: Mr. Mean
> Date: Thu, Aug 28, 2014 at 2:24PM
> Subject: [firstyearswim] Tonight!
> To: [First year Swimmers]
>
> Dearest Fucktards,
>
> Congrats on being the first class to officially fuck up the first night of welcome week. Thank Jesus Christ himself that there are many more opportunities for you to regain what little pride you shit stains have left.
>
> Tonight you all AS A WHOLE FUCKING CLASS and I repeat AS A WHOLE FUCKING CLASS, that means ALL OF YOU, will embark in yet another team tradition known as "Amphitheater night". Tonight after you all greet the recruits at the hotel, will be camping out at the amphitheater in order to get an early start on saving seats for the team and possibly your future teammates. . . . You will be joined by your fellow women's team first years so maybe one of will finally get their dicks wet for the first time, but don't count on it because most of you are too stupid to even know where a vagina is.

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

I will be coming by the amphitheater later tonight to make sure you all aren't dead or worse sitting your dorm rooms doing nothing while you have tasks and things to find for me.

FUCK YOU,

Mr. Mean

31.    Plaintiff felt compelled to comply out of fear and thus spent the night outside at the amphitheater, as directed, and held seats at the game for the defendants.

32.    Thereafter, during the so-called "Welcome Week," defendants threatened plaintiff by email that if he was asked how the eye injury caused by the glass flying when Charles Rommel broke a bottle at the Swim House had occurred, he was to make a false statement. This directive thus urged yet another violation of the UVA Honor Code.

33.    Plaintiff was also repeatedly threatened that he must complete the scavenger hunt, even though it required taking items by theft from a retail store, theft from the school, theft from a teammate, all of which would have been in violation of the UVA Honor Code.

34.    While plaintiff was in a meeting with his advisor discussing academic matters, defendant David Ingraham entered the office where the meeting was taking place (an office a short distance down the hall from where the swim coaches had their offices) and interrupted the meeting to tell plaintiff to take off the tie he was wearing, the one plaintiff had been given and told to wear at all times the night he was hazed at the Swim House. Defendant Ingraham continued to interrupt the meeting while demanding that plaintiff remove the tie. Defendant Ingraham had been so insistent that this tie be removed because he feared that the swim coach would see it and from it determine that hazing was continuing in the same manner as it had in prior years when the same or similar illegal and harmful activities as described above had been undertaken.

35.    Other acts of hazing and threats took place. Plaintiff and the other first years on the swim team were threatened not to tell anyone what had happened.

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

**Defendants' Retaliation Against Plaintiff**

36.    On September 6, 2014, the UVA head swim coach, Augie Busch, was informed from a source outside the UVA community that there had been a problem with hazing involving the UVA swim team. Coach Busch questioned the freshman swim team members about what had happened and, when plaintiff was questioned, on September 7, 2015, he told the truth by confirming that the hazing had in fact taken place. Plaintiff thereafter described the hazing events in detail to the UVA Dean of Students on September 9, 2014.

37.    Somehow, defendants learned of plaintiff's disclosures. From that time forward, plaintiff's swim career at UVA was ruined. He was ostracized and threatened by the defendants and was told by the head swim coach that he should not practice in the pool when the other swimmers were present because the coach was concerned for his safety. When plaintiff did practice on his own, while someone was watching for protection, that person would be called and alerted when other members of the swim team were coming to practice so that plaintiff could leave the pool before the others arrived. The swim coach, Augie Busch, told plaintiff's parents that the defendants and others perpetrating the hazing saw plaintiff as "a rat." When plaintiff later pressed to be allowed to rejoin the team practices, on September 15, 2014, coach Busch informed him that his physical safety could not be guaranteed.

38.    The hostility from his teammates substantially diminished his role on the team, his ability to improve his swimming skills, and his stamina as a swimmer because the swim coach did not attend many of the in-pool practices and thus plaintiff was not safe to come to those practices.

39.    The threat to his safety was very real. Indeed, swim coach Augie Busch, informed plaintiff by email that he could not practice with the team, and that, if he did want to

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

22

swim, he had to be out of the pool by the time the team would show up to practice. As a result, plaintiff could not keep up with the swimming regimen required and was ostracized. His swim career at UVA was therefore destroyed by defendants.

40.     Plaintiff has therefore lost his hard-earned and well-deserved dream of furthering his academic career and his swim career at UVA. He has left the school, is unable to enjoy the benefits of his swim contract with UVA and cannot pursue the academic career he sought to have at UVA.

## COUNT I

### Assault

41.     Plaintiff realleges each and every allegation stated above as if separately repleaded in full herein.

42.     The actions of the defendants described above constitutes assault against the plaintiff in that, among other actions, they threatened him repeatedly with sodomy and by yelling and screaming at him in a menacing way while he was forced to remain at the Swim House.

43.     Plaintiff has suffered damages by reason of the above-described conduct in the amounts to be proved at trial.

## COUNT II

### Battery

44.     Plaintiff realleges each and every allegation stated above as if separately repleaded in full herein.

45.     The actions of the defendants described above involved battery against the plaintiff because, among other harmful or offensive acts of touching, defendants placed a

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

garbage can on his head, forcibly blindfolded him, led him around while blindfolded, and forced him to ingest so much milk and prune juice, on threat of violence if he did not do so, that he vomited.

46.     Plaintiff has suffered damages by reason of the above-described conduct in the amounts to be proved at trial.

## COUNT III

### False Imprisonment

47.     Plaintiff realleges each and every allegation stated above as if separately repleaded in full herein.

48.     Defendants' conduct of forcing plaintiff to remain in the Swim House and forcing him to remain in the bathroom while it was dark and heated was a false imprisonment.

49.     Plaintiff has suffered damages by reason of the above-described conduct in the amounts to be proved at trial.

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

## COUNT IV

### Hazing in Violation of Virginia Civil Law

50.     Plaintiff realleges each and every allegation stated above as if separately repleaded in full herein.

51.     Defendants' actions above, including the entire activity leading up to and occurring at the Swim House, and the menacing emails threatening sodomy, constitute hazing of the plaintiff by the defendants, in violation of Section 18.2-56 of the Virginia Code, in that these actions caused and involved recklessly or intentionally endangering the health or safety of a student or students, or inflicting bodily injury on a student or students in connection with or for the purpose of initiation, admission into or affiliation with or as a condition for continued membership in a club, organization, association, fraternity, sorority, or student body regardless of whether the student or students so endangered or injured participated voluntarily in the relevant activity.

52.     Plaintiff has suffered damages by reason of the above-described conduct in the amounts to be proved at trial.

## COUNT V

### Tortious Interference With Contractual Relations

53.     Plaintiff realleges each and every allegation stated above as if separately repleaded in full herein.

54.     Defendants' actions in threatening Plaintiff and thereafter causing him to be unable to enjoy his hard-earned and well-deserved swim contract with UVA is an unjustified and intentional interference with plaintiff's contract with UVA, by which the defendants intended to prevent plaintiff from enjoying its benefits.

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

25

55. Plaintiff has suffered damages by reason of the above-described conduct in the amounts to be proved at trial.

## COUNT VI

### Intentional Infliction of Emotional Distress

56. Plaintiff realleges each and every allegation stated above as if separately repleaded in full herein.

57. The actions described in this Complaint undertaken by the defendants against the Plaintiff were intentional or reckless.

58. These actions were outrageous and intolerable and they offend generally accepted standards of decency and morality.

59. There was a causal relation between the actions of defendants and the emotional distress of the plaintiff, and his distress was severe.

60. Plaintiff has suffered damages by reason of the above-described conduct in the amounts to be proved at trial.

## COUNT VII

### Punitive Damages

61. Plaintiff realleges each and every allegation stated above as if separately repleaded in full herein.

62. The actions described above were intentionally undertaken against the plaintiff by the defendants in a manner that was wanton, oppressive, or with such malice as to evince a spirit of malice or criminal indifference to civil obligations.

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

63. As a result, Plaintiff should be awarded punitive damages in order to punish defendants and to deter defendants from acting in this manner. Plaintiff seeks such an award in

an amount that is lawful and within the discretion of the jury after trial.

## COUNT VIII

### Conspiracy in Violation of Virginia Common Law

64.     Plaintiff realleges each and every allegation stated above as if separately repleaded in full herein.

65.     Each of these defendants conspired together and combined to do that which is contrary to law, including hazing, assault, battery, false imprisonment, and other conduct against the plaintiff, in the manner described above, that was wrongful or harmful to plaintiff.

66.     Defendants' conduct constitutes a conspiracy against plaintiff under Virginia Commonwealth law.

67.     Plaintiff has suffered damages by reason of the above-described conduct in the amounts to be proved at trial.

## COUNT IX

### Conspiracy in Violation of Virginia Code Sections 18.2-499 and 18.2-500

68.     Plaintiff realleges each and every allegation stated above as if separately repleaded in full herein.

69.     By the intentional and calculated destruction of plaintiff's valuable swim contract with UVA, the defendants combined and conspired with each other, in committing the above- described actions, to injure plaintiff in his business and property, in Violation of Section 18.2-499 and 18.2-500 of the Virginia Code.

70.     Plaintiff has suffered damages by reason of the above-described conduct in the amounts to be proved at trial.

Jonathan Rogers, P.C.
Attorney At Law
Floyd, Virginia 24091
540-745-8686

## COUNT X

### Negligence

71.    Plaintiff realleges each and every allegation stated above as if separately repleaded in full herein.

72.    The actions of the defendants toward plaintiff were negligent in that the defendants had a duty to plaintiff in the circumstances to act with ordinary care toward him, they failed in that duty by the manner in which they treated plaintiff, and their actions were the cause in fact and the proximate cause of his injuries.

73.    Plaintiff has suffered damages by reason of the above-described conduct in the amounts to be proved at trial.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that the Court grant plaintiff the following relief:

(1)    For compensatory damages in an amount to be proven at trial;

(2)    For punitive damages in an amount to be proven at trial

(3)    For attorneys' fees and of all costs of this and related actions;

(4)    For treble damages pursuant to Virginia Code Section 18.2-400; and

(5)    For such other relief as this Court deems just and proper.

### JURY DEMAND

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, plaintiff demands a jury trial on all issues so triable.

Respectfully submitted this 26th day of June, 2015.

JONATHAN ROGERS, P.C.
ATTORNEY AT LAW
FLOYD, VIRGINIA 24091
540-745-8686

By Counsel,

**JONATHAN ROGERS, P.C.**

By: */s/ Jonathan Rogers*
Jonathan Rogers (VSB#14298)
P.O. BOX 136
Floyd, Virginia, 24091
Phone: 540.745.8686
Fax 540.745.8688
Email: jonathanrogers@swva.net

**MARKHAM & READ**

/s/ John J.E. Markham, II
John J.E. Markham, II  (MA Bar No. 638579)
Admission *Pro Hac Vice* to be sought
Bridget Zerner (MA Bar No. 669468)
Admission *Pro Hac Vice* to be sought
One Commercial Wharf West
Boston, Massachusetts 02110
Tel: (617) 523-6329
Fax: (617) 742-8604
jmarkham@markhamread.com
bzerner@markhamread.com

*Attorneys for Plaintiff*